**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **PAUL NG INVESTORS, LLC,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **NANO GLOBAL CORP., WCRST, LLC,** | § | **No. 1:20-CV-00488-RP** |
| **AND STEVE PAPERMASTER,** | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court are Plaintiff Paul NG Investors, LLC's Motion for Default Judgment Against Defendant Nano Global Corporation (Dkt. #14), Paul NG Investors, LLC's Motion for Default Judgment Against Defendant WCRST, LLC (Dkt. #15), and Paul NG Investors, LLC's Motion for Default Judgment Against Defendant Steve Papermaster (Dkt. #16).[1] After reviewing the pleadings, the relevant case law, and the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I.   BACKGROUND

On May 6, 2020, Plaintiff Paul NG Investors, LLC ("PNGI") filed this suit against Defendants Nano Global Corp. ("Nano"), WCRST, LLC ("WCRST"), and Steve Papermaster. Dkt. #1.[2] Nano is an "early stage privately held medical technology company" that sought to raise

---

[1] These motions were referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

[2] PNGI invokes this court's diversity jurisdiction because it, through the citizenship of its members, is a citizen of California, Florida, Ohio, and Pennsylvania; Defendants are citizens of Delaware and Texas; and the amount in controversy is alleged to be over $75,000. 28 U.S.C. § 1332; *See MidCap Media Finance, L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019) ("[T]he citizenship of a[n] LLC is determined by the citizenship of all of its members.") (alterations in original) (internal quotation marks omitted).

capital in 2016. Dkt. #1 at 3. Steve Papermaster ("Papermaster") is the founder and CEO of Nano, and WCRST is "an entity created and owned by [Papermaster] to hold interests, including stock, in Nano." *Id.*

Around March 6, 2017, PNGI invested in Nano by entering into a number of transactions with Nano, Papermaster, and WCRST. *Id.* The first of these transactions was a Stock Transfer Agreement between PNGI and WCRST, whereby WCRST transferred 1,900,000 shares of its Series 1 Preferred Stock in Nano to PNGI at a price of $0.02 per share. *Id.* In the second transaction, PNGI invested in a Convertible Promissory Note issued by Nano (the "Convertible Note"). *Id.* Under the Convertible Note, Nano agreed to repay the principal amount of $4,100,00.00 plus interest at a rate of 4.25% per annum on the maturity date of March 6, 2019, or earlier if Nano closed a Qualified Financing, "upon which PNGI could convert the principal of the Note into an equity security in Nano." *Id.* at 3-4. The Convertible Note subsequently was amended to extend the maturity date to March 31, 2020. *Id.* at 4.

In the third transaction, PNGI entered into a Letter Agreement (the "Letter Agreement") with WCRST and Papermaster. *Id.* Per the Letter Agreement, WCRST and Papermaster agreed they would "(1) re-purchase the shares in Nano that were the subject of the Stock Transfer Agreement at a price equal to PNGI's purchase price and (2) purchase the Convertible Note for an amount equal to the principal amount thereof and all accrued and unpaid interest" if, by December 1, 2017, the Convertible Note had not been converted into preferred stock in Nano. *Id.* Per an amendment, the relevant date under the Letter Agreement was extended to March 31, 2020. *Id.*

Around June 28, 2019, PNGI and Nano entered into an additional Convertible Promissory Note for $1,000,000.00 (the "Additional Note") with the purpose of providing Nano additional funding. *Id.* Per two amendments, the maturity date for the Additional Note was extended from

August 15, 2019, to March 31, 2020. *Id.* Additionally, the second amendment contained the following provision:

> [w]ithout limiting any of the [Nano's] rights under this Note or otherwise, if a Qualified Financing shall not have occurred on or prior to the Maturity Date, then at any time after the Maturity Date[,] [Nano], upon written notice from [PNGI], shall remit to [PNGI] within five (5) days of receipt of such notice, the amount of $1,500,000 (being the Original Principal Amount multiplied by 1.5) plus unpaid accrued interest on the Original Principal Amount from June 28, 2019 through the date that such payment is made to [PNGI], without any requirement for [PNGI] to make any claim or institute any proceeding under or in respect of this Note.

Dkt. #18-4 (Second Amendment to Additional Note).

As of the filing of this lawsuit – over a month after the March 31, 2020 maturity dates – Nano has failed to repay any of the principal or accrued interest relating to either the Convertible Note or the Additional Note. *Id.* at 5. Additionally, Nano has not completed a Qualified Financing. *Id.* On April 1, 2020, PNGI "provided notice and demand to WCRST and [Papermaster] under the [Letter Agreement] to fulfill their obligations to repurchase the shares in Nano and to purchase the [Convertible Note]." *Id.* WCRST and Papermaster have not satisfied their obligations to PNGI under the Letter Agreement.

**A.    Damages Sought in Complaint and Motions for Default Judgment**

Per its Complaint, PNGI seeks only compensatory damages against Defendants arising out of their respective breaches of the Convertible Note, Additional Note, and Letter Agreement. In Count I, PNGI seeks $4,670,042.72 in damages against Nano for its breach of the Convertible Note – $4,100,00.00 in principal and $570,042.72 in accrued interest. Dkt. #1; Dkt. #14; Dkt. #14-1. In Count II, PNGI seeks compensatory damages jointly and severally against WCRST and Papermaster for their breach of the Letter Agreement in the amounts of $4,708,042.42 – $38,000 for the obligations relating to the Stock Purchase Agreement and $4,670,042.72 relating to the

purchase price of the Convertible Note. *Id.* In Count III, PNGI seeks $1,032,720.46 in damages against Nano for its breach of the Additional Note. *Id.*

    **B.**    **Damages Sought in PNGI's Supplemental Brief in Support of Motions for Default Judgment against Defendants**

Upon beginning its analysis, the court discovered PNGI had not provided sufficient evidence supporting its damage calculations. Thus, the court ordered PNGI to file a supplemental brief explaining its calculation. *See* Dkt. #17. On December 4, 2020, PNGI filed its Supplemental Brief. Dkt. #18. Notably, the damage totals sought in the Supplemental Brief are different than those requested in PNGI's Complaint and Motions for Default Judgment. *Compare* Dkt. #1, #14, *with* Dkt. #18. The difference in damages for Counts I and II can be chalked up to previously mistaken interest-payment calculations. However, in Count III, PNGI seeks damages based on an amended reading of the underlying contracts. *See* Dkt. #18 at 2-3. Specifically, PNGI seeks additional damages against Nano based on the second amendment of the Additional Note, which increases the principal amount Nano owes on the Additional Note from $1,000,000.00 to $1,500,000.00. *See id*; *see also* Dkt. #18-4 at 1-2. Based on these damage adjustments, PNGI clarifies in its Supplemental Brief that it is seeking the following damages:

- Per Count I, $4,634,684.92 against Nano for breach of the Convertible Agreement. This includes a principal amount of $4,100,000.00 and interest equaling $534,684.92.

- Per Count II, $4,672,684.92 jointly and severally against Papermaster and WCRST. This includes the total amount owed under Count I plus $38,000.00 relating to obligations under the Stock Purchase Agreement.

- Per Count III, $1,532,253.42 against Nano for breach of the Additional Note. This includes a principal amount of $1,500,000 (the original principal amount multiplied by 1.5) and interest equaling $32,253.42.[3]

Dkt. #18. Because these totals are supported by the record, the underlying agreements, PNGI's provided calculations, and appear little more than corrected damage calculations based on the same contracts discussed in the Complaint, the court finds the damages described in PNGI's Supplemental Brief consistent with the relief sought in its Complaint. Thus, the court construes PNGI's filings as seeking the amounts depicted in the Supplemental Brief.

## II.   PROCEDURAL HISTORY

On May 7, 2020, counsel for Defendants filed a Waiver of the Service of Summons. Dkt. #3. Subsequently, Defendants failed to file a responsive pleading or motion, prompting PNGI to file its Motions for Entry of Default against all Defendants. *See* Dkt. #8, #9, #10. The Clerk's Office entered default against all Defendants on July 23, 2020. *See* Dkt. #11, #12, #13. On July 24, 2020, PNGI filed its Motions for Default Judgment against Defendants. *See* Dkt. #14, #15, #16.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) governs the entry of a default judgment by a court. *See* FED. R. CIV. P. 55(b)(2).  In the Fifth Circuit, three steps are required when obtaining a default judgment: (1) default by the defendant, FED. R. CIV. P. 55(a); (2) entry of default by the Clerk's Office, FED. R. CIV. P. 55(a); and (3) entry of a default judgment by the district court, FED. R. CIV. P. 55(b); *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Additionally, in order

---

[3] The interest amount owed on the Additional Note is calculated based on the Additional Note's original principal amount of $1,000,000.00. *See* Dkt. #18-3 at 1. This calculation is correct based on the Additional Note's second amendment, stating that "unpaid accrued interest" is to be calculated "on the Original Principal Amount." Dkt. #18-4 at 2-3.

to obtain a default judgment, the movant must establish that the defendant is neither a minor nor an incompetent person, and that the defendant is not in military service. 50 U.S.C. § 3931; *Bank of New York Mellon Tr. Co., N.A. v. Hancock*, 5:19-CV-270-H-BQ, 2020 WL 2989023, at *2 (N.D. Tex. June 4, 2020). Where a defendant has defaulted, the factual allegations in the complaint are taken as true, except regarding damages. *See Jackson v. FIE Corp.*, 302 F.3d 515, 525 n.29 (5th Cir. 2002).

"Default judgments are a drastic remedy" and thus are "resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Accordingly, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (default is not treated as an absolute confession by defendant of liability and of plaintiff's right to recover). A court must accept pleaded facts as true, but must also determine whether those facts state a claim upon which relief may be granted. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (affirming district court's denial of entry of default judgment because, even if true, plaintiff's allegations would not support imposing liability against defendants).

Courts use a three-part test to determine when to enter a default judgment. The court first considers whether the entry of default judgment is procedurally warranted. *United States v. Rod Riordan Inc.*, No. MO:17-CV-071-DC, 2018 WL 2392559, at *2 (W.D. Tex. May 25, 2018); *Nasufi v. King Cable Inc.*, No. 3:15-CV-3273-B, 2017 WL 6497762, at *1 (N.D. Tex. Dec. 19, 2017) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).

Next, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015) (citing *Nishimatsu*, 515 F.2d at 1206). In doing so, courts assume that, due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *See Rod Riordan Inc.*, 2018 WL 2392559, at *3.

Finally, the court determines what form of relief, if any, the plaintiff should receive. *Id.* While damages are normally not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *Id.* (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

## IV.    ANALYSIS

### A.    Default Judgment is Procedurally Warranted

As an initial matter, PNGI has provided sufficient evidence proving that Defendants are not in military service and are neither minors nor incompetent persons. PNGI has submitted an affidavit showing that Papermaster is not in military service, incompetent, nor a minor. Dkt. #18 at 2; Dkt. #18-1 at 2. Furthermore, WCRST and Nano are corporations and thus cannot be minors, incompetent persons, nor in military service. *Id.*

The Fifth Circuit has set forth six factors for a court to consider in determining whether a default judgment is procedurally proper. *United States v. Padron*, 7:17-CV-00009, 2017 WL 2060308, at *2 (S.D. Tex. May 12, 2017). These factors are: "(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5)

harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion." *G&G Closed Circuit Events, LLC v. Mickey's Sports Bar & Grill, LLC*, No. 3:17-CV-01310-M, 2017 U.S. Dist. LEXIS 209912, at *3 (N.D. Tex. Dec. 21, 2017).

Here, all of these factors weigh in favor of granting default judgment. First, Defendants filed their Waiver of the Service of Summons, which expressly states that "[Defendants' Counsel] understand[s] that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 . . . . If I fail to do so, a default judgment will be entered against me or the entity I represent." Dkt. #3. While this Waiver does not constitute as an appearance, *see Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 938 (5th Cir. 1999), it makes plain that Defendants received "a copy of the complaint" and were put on full notice of the above-styled lawsuit. Dkt. #3. Second, Defendants failed to file an answer or any responsive pleadings; therefore, there are no material facts in dispute. *Padron*, 2017 WL 2060308 at *3. Third, Defendants' failure to respond or otherwise appear threatens to cause substantial prejudice because it "threatens to bring the adversarial process to a halt, effectively prejudicing Plaintiff's interests." *Id*. Fourth, the grounds for default are clearly established because Defendants have failed to answer or defend. Fifth, there is no indication that default was caused by a good faith mistake or excusable neglect. Sixth, default judgment would not be harsh in this situation because the judgment would be for nothing more than what Defendants owe under the law. Finally, the court is unaware of any reason why it should set aside any default judgment it may enter. Because of the foregoing, default judgment against Defendants is procedurally proper.

**B.     Sufficient Basis in the Pleadings for the Judgment**

The court next must determine whether there is a sufficient basis in the pleadings for the judgment requested. *Nishimatsu*, 515 F.2d at 1206. Based on its failure to respond, the court assumes that Defendants admit all well-pleaded facts in PNGI's Complaint. *See id*.

PNGI's Complaint asserts three causes of action for breach of contract against Defendants. Dkt. #1 at 5-8. In Texas, the elements for a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). A breach occurs when a party fails to perform a duty required by the contract. *Id*.

Taking its well-pleaded allegations as true, PNGI has satisfied the elements of all three breach of contract claims by showing that:

1.  There were valid contracts between PNGI and Defendants in the form of the Stock Transfer Agreement, Convertible Note, Letter Agreement, and Additional Note, Dkt. #1; Dkt. #1-2 (Restricted Stock Transfer Agreement); Dkt. #1-3 (Convertible Agreement); Dkt. #1-4 (Letter Agreement); Dkt. #1-5 (Additional Note);

2.  PNGI fully performed under the various contracts, Dkt. #1;

3.  Nano did not complete a Qualified Financing, nor repay any of the owed principal or interest on the Convertible or Additional Notes, *id.* at 5;

4.  Upon receiving notice and demands from PNGI, WCRST and Papermaster did not satisfy any of their obligations under the Letter Agreement, *id*;

5.  PNGI sustained damages due to Defendants' breaches, *id.* at 5-7.

Based on the foregoing, PNGI has sufficiently pleaded its breach of contract claims.

### C.      Damages

Having found that PNGI's Motions for Default Judgment should be granted and judgment entered in its favor, the undersigned must determine the appropriate amount of damages. When the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, as is the case here, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

As noted above, PNGI requests that the undersigned "issue [d]efault [j]udgments on each Count in the Complaint as follows: (1) on Count I as against Defendant Nano Global, Inc. in the amount of $4,634,684.92; (2) on Count II as against Defendants Steve Papermaster and WCRST LLC in the amount of $4,672,684.92; and (3) on Count III as against Defendant Nano Global, Inc. in the amount of $1,532,253.42." Dkt. #18 at 3.  In support of these sums, PNGI provides an affidavit explaining its damage calculations. *See* Dkt. #18-1. PNGI also provides various charts depicting its interest calculations. *See* Dkt. #18-2; Dkt. #18-3.

Based on the foregoing and considering all the relevant evidence, PNGI has demonstrated that a hearing is not necessary because it has submitted adequate documentation for the requested damages. Thus, the well-pleaded facts establish PNGI's claims for breach of contract and PNGI's entitlement to its requested damages.

## V.    RECOMMENDATIONS

The undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiff Paul NG Investors, LLC's three Motions for Default Judgment against Nano Global Corp., WCRST, LLC, and Steve Papermaster (Dkt. #14, #15, #16), and enter a final judgment stating that:

- Pursuant to Count I, Defendant Nano Global, Inc. is liable to Plaintiff PNGI for its breach of the Convertible Note in the amount of $4,634,684.92;

- Pursuant to Count II, Defendants Steve Papermaster and WCRST LLC are jointly and severally liable to PNGI for their breach of the Letter Agreement in the amount of $4,672,684.92;

- Pursuant to Count III, Defendant Nano Global, Inc. is liable to Plaintiff PNGI for its breach of the Additional Note in the amount of $1,532,253.42;

- The award shall bear post-judgment interest to be calculated and compounded pursuant to 28 U.S.C. § 1961, until paid in full; and

- Upon providing the appropriate documentation, PNGI may recover its reasonable attorneys' fees and costs from Defendants as allowed by, and pursuant to, Federal Rule of Civil Procedure 54(d) and Local Rule CV-7(j).

The court notes an adoption of this Report and Recommendation by the District Judge will effectively end this case.

## VI.   OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985);

*Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

     SIGNED December 9, 2020.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE